[Crim. No. 1012. First Appellate District, Division Two.—March 28, 1922.]

THE PEOPLE, Respondent, v. A. V. SEILER, Appellant.

[1] CRIMINAL LAW—MANSLAUGHTER—AUTOMOBILE COLLISION — SUFFICIENCY OF EVIDENCE.—A conviction on a charge of manslaughter is justified by evidence on behalf of the prosecution that the defendant was driving his automobile in the night-time either in the center of the highway or on the left-hand side thereof at a speed of forty-five or fifty miles an hour, when he collided with two other machines at a dangerous curve and killed the driver of one of them.

1. Homicide by negligent operation of automobile, notes, Ann. Cas. 1918E, 1146; 30 L. R. A. (N. S.) 458; 33 L. R. A. (N. S.) 403; L. R. A. 1918B, 954.

[2] ID. — DRIVING OF AUTOMOBILE AT UNLAWFUL RATE OF SPEED — KILLING OF HUMAN BEING — MANSLAUGHTER. — Death caused by driving an automobile in the night-time on the left-hand side of a hilly, serpentine, and heavily traveled road, at a speed of forty miles per hour, is manslaughter under section 192 of the Penal Code, defining such crime as the unlawful killing of a human being without malice in the commission of an unlawful act not amounting to a felony.

[3] ID. — CRIMINAL NEGLIGENCE — EVIDENCE — INAPPROPRIATE INSTRUCTION. — Where a prosecution for manslaughter involved the doing of unlawful acts and not lawful acts, it was neither necessary nor appropriate that the jury should have been instructed on the law of criminal negligence.

[4] ID. — COMMISSION OF LAWFUL ACT WITHOUT DUE CAUTION AND CIRCUMSPECTION — CONSTRUCTION OF CODE. — In order to constitute the kind of manslaughter defined by subdivision 2 of section 192 of the Penal Code, the act may be lawful but it must be one which might produce death, and which does produce death, and it must be committed without due caution and circumspection. The lack of due caution and circumspection need not go to the extent of being wanton or reckless, although it might possibly be such as would be defined as culpable, but the word "culpable" is not an apt description of the idea intended to be conveyed by the words "due caution and circumspection." (Opinion of supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of San Mateo County and from an order denying a new trial. George H. Buck, Judge. Affirmed.

The facts are stated in the opinion of the court.

Theodore A. Bell and Ralph Starke for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

STURTEVANT, J. — The defendant was convicted on a charge of manslaughter; he moved for a new trial; the motion was denied; he made a motion in arrest of judgment and that motion was denied; and he has appealed from the judgment and the order denying him a new trial.

The appellant contends that the evidence is insufficient to support the verdict. The evidence shows that on the evening of the twenty-second day of April, 1921, the defendant

was driving an automobile from Burlingame north toward San Francisco. At the point known as Death Curve, which is located below the cemeteries and between Burlingame and San Francisco, the car driven by the defendant collided with an automobile driven by Harry D. Utter and thereafter proceeded and immediately struck an automobile driven by the deceased, Harry R. Doty. The latter collision was of such violence that Doty was killed. The place of the accident is particularly dangerous, as may be inferred from the name it bears. Each of the drivers of each of the machines lived in the general neighborhood and knew the dangerous nature of the spot. The accident occurred about 8 o'clock in the evening. The prosecution called as its witnesses persons who were riding in the other machines and the defendant called as his witnesses persons who were riding in his machine. It will serve no purpose to quote the testimony of each witness, but it may be said that the defendant's witnesses testified that the defendant was driving on the right-hand side of the highway, at a rate of speed variously estimated at eighteen, twenty, or twenty-five miles per hour; that the other two automobiles were very close together and both were going down the road at a rate of speed variously estimated at thirty-five or forty miles per hour. Of course, if the jury had accepted the foregoing testimony they would have been entitled to bring in a verdict of not guilty. Their verdict, however, indicates that they did not accept the foregoing as being the true statement of the facts.

[1] The witnesses called by the prosecution testified that at the time of the first impact, and also at the time of the second impact, the defendant was either in the center of the road or on his left-hand side; some of those witnesses placed the speed of the defendant's car at forty-five miles an hour, and some placed his speed as high as fifty miles an hour; those same witnesses claimed that Utter's car and Doty's car, at the time of the accident, were traveling at a rate of speed not exceeding twenty, twenty-three, twenty-four, or twenty-five miles an hour. The jury had the right to believe, and if it did believe, that, at the time of the accident, the defendant attempted, in the night-time, to make Death Curve by driving on the left-hand side of the road at a speed

of forty-five or fifty miles an hour, then, and in that event, the defendant was guilty of manslaughter.

On the publication of the foregoing, the appellant applied for a rehearing. In his petition he set forth that certain errors were committed by the trial court in instructing the jury. The petition was granted for the purpose of allowing the appellant to present his points. As we understand the appellant's contention, it is that the trial court gave instructions which were conflicting and that the instructions of the trial court stated to the jury that the defendant should be convicted if the decedent was killed by reason of the "criminal negligence" of the defendant, but that the trial court did not define the expression "criminal negligence." Complaint is also made that one instruction as to the proof was unfair as to the defendant. The instructions given we have numbered for convenience as follows:

"I.

"I want to say to you that the driving of an automobile upon the public street or highway *under the circumstances disclosed by the evidence in this case* was a lawful act. In other words, it was an act which this defendant or any other person had under the law a right to do.

"II.

"If you are convinced to a moral certainty and beyond a reasonable doubt that the defendant on the occasion in question was guilty of negligence, and you further find to a moral certainty and beyond a reasonable doubt that the negligence of which he was then and there guilty, if any, was of criminal character, or, in other words, was criminal negligence, you will in that case return a verdict of guilty on that count as charged in the information.

"III.

"If you are convinced to a moral certainty and beyond a reasonable doubt that he was not at the time in question guilty of negligence of any sort or kind, whatsoever, and was exercising reasonable care and circumspection and caution in the operation of the automobile, and that he was not under the influence of intoxicating liquor, you will, of course, return a verdict of not guilty."

It was the theory of the prosecution, and it introduced evidence tending to prove, (A) that at the time of the accident the defendant was under the influence of intoxicating

liquor, while driving his automobile; (B) that at said time he was driving on the left-hand side of the road; (C) that immediately prior to the accident he was driving at a speed of forty or forty-five miles or fifty miles per hour; (D) that the accident occurred about 8 o'clock at night on a hilly, serpentine road, which is, during the day and night, traveled by vast numbers of pedestrians and vehicles, and, at said time and place, the defendant did not operate his car in a careful and prudent manner and at a reasonable rate of speed having regard to the traffic and use of said highway. Under the Motor Vehicle Act of California as amended (Stats. 1919, p. 191), specification A is a felony (Id., sec. 17); specification B is a misdemeanor (Id., sec. 20, subd. a; sec. 32, subd. a); specification C is a misdemeanor (Id., sec. 22, subd. a; sec. 32, subd. a), and specification D is a misdemeanor (Id., sec. 22, subd. a; sec. 32, subd. a).

In the information on which the defendant went to trial there were two counts. The second count charged the defendant as under specification. A. On that count the jury refused to bring in a verdict. For the purpose of this decision we will assume that the jury acquitted the defendant thereon and we will not consider intoxication in determining the merits of this appeal.

Section 192 of the Penal Code, in effect, provides as follows: Manslaughter is the unlawful killing of a human being without malice. It is involuntary—in the *commission of an unlawful act* not amounting to a felony; or,

Manslaughter is the unlawful killing of a human being without malice. It is involuntary—in the *commission of a lawful act* which might produce death, without due caution and circumspection.

[2] Under our statutes if the death was caused under specification B, C, or D, the jury was entitled to bring in a verdict of guilty under the first definition of manslaughter. In other words, if one performs an act in a *manner expressly forbidden* by statute and thereby causes the death of another, he may be convicted under the definition of manslaughter as firstly defined. (*State* v. *Campbell,* 82 Conn. 671, 677 [135 Am. St. Rep. 293, 18 Ann. Cas. 236, 74 Atl. 927]; *People* v. *Camberis,* 297 Ill. 455 [130 N. E. 712]; *State* v. *Clark,* 99 Or. 629 [196 Pac. 360]; *State* v.

*Rountree,* 181 N. C. 535 [106 S. E. 669] ; 2 R. C. L. 1212.)
If one performs an act in a *manner not forbidden by statute,*
but in a wanton, reckless, or culpable manner, and thereby
kills another, he may be convicted under the definition of
manslaughter as secondly defined. (*Schultz* v. *State,* 89
Neb. 34 [Ann. Cas. 1912C, 495, 33 L. R. A. (N. S.) 403, 130
N. W. 972] ; *State* v. *Goetz,* 83 Conn. 437 [30 L. R. A.
(N. S.) 458, 462, 76 Atl. 1000] ; 21 Cyc. 760.)

In other words, every alleged act of the defendant done
in the management of his car at the time of the accident
is provided against in the statute and is made unlawful.
This being so, the case involved the doing of *unlawful* acts
and not *lawful* acts.

[3] It will be noted that the instructions given by the
trial court were not addressed to homicides committed in the
performance of unlawful acts. It will be noted, at once, that
instruction I, which is addressed to homicides committed in
the performance of lawful acts, is far more favorable to the
defendant than he was entitled to. Under that instruction
as it is worded, the jury should have brought in a verdict
of not guilty. But, by its verdict, it appears that the jury
disregarded the instruction. Instruction II deals with ''crim-
inal negligence.'' That expression is used in those juris-
dictions where it has been created by statute. (29 Cyc.
424.) Nebraska is such a state. ''The term criminal negli-
gence, as it is used in section 3, article I of chapter 72
of the Compiled Laws of Nebraska, is defined to be gross
negligence. It is such negligence as would amount to a
flagrant and reckless disregard of her own safety and
amounts to a willful indifference .to the injury liable to
follow.'' (*Omaha & R. V. R. Co.* v. *Chollette,* 33 Neb. 143,
146 [49 N. W. 1114, 1115].) In other words, criminal negli-
gence consists of the commission of a lawful act, but in a
culpable, reckless manner. However, as stated above, the
performance of a lawful act is not involved in the issues
in this case. It was neither necessary nor appropriate that
the trial court should have given instruction number II
concerning criminal negligence. Having done so, however, it
was not error for the trial court to omit to go further
and define criminal negligence.

Instruction number III is not exactly correct. The in-
struction would have been in better form if it had been

worded as follows: "If you are not convinced to a moral certainty and beyond a reasonable doubt that he was at the time in question guilty of negligence of any sort or kind, whatsoever, and was exercising reasonable care and circumspection and caution in the operation of the automobile, and that he was not under the influence of intoxicating liquor, you will, of course, return a verdict of not guilty." Such undoubtedly was the meaning of the trial court and such undoubtedly was the meaning which the jury obtained, because the very next sentence in the court's charge was, "On the other hand if you entertain reasonable doubt as to whether he was guilty of negligence of any kind or character, whatsoever, or as to whether he was under the influence of intoxicating liquor, you will in that case give him the benefit of such reasonable doubt and return a verdict of not guilty."

We find no reversible error in the record. The judgment is affirmed.

Nourse, J., and Langdon, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 25, 1922, and the following opinion then rendered thereon:

THE COURT.—[4] The opinion of the district court contains this passage: "If one performs an act in a manner not forbidden by statute, but in a wanton, reckless or culpable manner, and thereby kills another, he may be convicted under the definition of manslaughter as secondly defined." The statute (Pen. Code, sec. 192, subd. 2) defines involuntary manslaughter of this specific character as the unlawful killing of a human being, involuntarily, but "in the commission of a lawful act which might produce death . . . without due caution and circumspection." In order to constitute this kind of manslaughter the act may be lawful but it must be one which might produce death, and which does produce death, and it must be committed without due caution and circumspection. The lack of due caution and circumspection need not go to the extent of being wanton or reckless, although it might possibly be such as would be

defined as culpable. But the word "culpable" is not an apt description of the idea intended to be conveyed by the words "due caution and circumspection." On this subject see note II to the case of *Johnson* v. *State* (1902), 61 L. R. A. 277.

This remark was not necessary to the decision of the district court and, therefore, its inaccuracy does not require us to grant a rehearing.

The petition for a rehearing is denied.

Shaw, C. J., Shurtleff, J., Wilbur, J., and Lawlor, J., concurred.