[Crim. No. 1621.   Third Appellate District.—June 21, 1938.]

THE PEOPLE, Respondent, v. CLARK EDGAR WARNER, Appellant.

Richard H. Fuidge and McGilvray & McGilvray for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

PULLEN, P. J.—This is an appeal from an order denying the motion for a new trial and from the judgment of conviction for a violation of section 500 of the Vehicle Code.

The facts briefly are that defendant, on the day in question, was driving a truck along a narrow county road bordered upon both sides by cherry trees. The road was paved with oil macadam and varied in width from fifteen to seventeen feet. Some time in the morning of October 8, 1937, Mrs. Edna Choate and her husband, parked their Ford truck, to which there was attached a small trailer, on the side of this road near the vicinity of the bunkhouse on the Swetzer ranch, leaving their car in such a manner that the left front wheel of the truck was either on or immediately off the paved portion of the roadway. About the middle of the day defendant, proceeding easterly, driving a Dodge truck, passed the parked Ford truck. On his return trip about 4 o'clock in the afternoon, as he rounded a turn some distance westerly of the parked car he again saw the truck and trailer parked in the same position as when he passed it earlier in the day. Just prior to this time Mrs. Choate carried a small child across the highway and opening the Ford door next to the driver's seat on the road side of the truck, placed the child on the seat and proceeded to change its clothing. As she thus stood at the side of the car leaning over the seat, Robert Choate, her grandson about four years of age, came to her from either across the highway or from the rear of the truck, and she, observing the oncoming car of defendant, drew the little boy close to her side as the car approached. As the truck driven by Warner approached the parked car of Choate it swung away from its proper side of the road and in a gradual curve drew to the side of the road upon which the Ford truck was parked. Just as the truck passed, Mrs. Choate felt an impact and then saw her grandson lying fatally injured on the ground about even with the rear wheel of the truck.

The testimony of Warner was that as he rounded the turn he saw the truck, but until after the accident saw neither Mrs. Choate nor either of the children. However, as he came down the road a small child, so he testified, started out from behind a pile of lug boxes across the road from the truck where several other children were at play, but seeing the truck approaching, turned and ran back. The defendant slackened his speed and swung over to his left in order to safely pass the boxes and avoid striking any of the children who might run out from behind the boxes. Just as he passed the Choate truck he felt a slight impact and brought his car to a stop. As he got out to see what had happened, he saw that the rear view mirror attached to the cab of his truck had been broken off, and hearing a woman scream he immediately ran back to the scene of the accident.

The evidence indicates that apparently the rear view mirror had struck the outside frame of the truck door which was standing ajar, and this impact had in some way thrown the little boy against the Ford truck and then against defendant's truck, causing his death.

Warner was duly charged, arraigned, and upon a trial by jury found guilty of a violation of section 500 of the Motor Vehicle Act, i. e., of unlawfully and negligently driving a motor vehicle on the left-hand side of the highway, and sentenced to one year in the Yuba County jail.

It is the contention of appellant that there is nothing in the evidence to indicate criminal negligence, and that he was not negligent in any manner. It is not necessary, however, to prove criminal negligence to establish the offense of negligent homicide.

Section 500 of the Vehicle Code reads as follows:

''When the death of any person ensues within one year as the proximate result of injuries caused by the driving of any vehicle in a negligent manner, or in the commission of an unlawful act not amounting to felony, the person so operating such vehicle shall be guilty of negligent homicide . . . ''

Defendant maintains that section 500 of the Vehicle Code requires the same degree of proof as is necessary to establish manslaughter as defined in the Penal Code, sections 192 and 194.

It is apparent that it was the intention of the legislature in enacting section 500 of the Vehicle Act to define a crime different from that provided for in the definition of man-

slaughter, and to cover a different class of crimes than those within the purview of the provisions of the Penal Code.

In the case of *People* v. *Pryor*, 17 Cal. App. (2d) 147 [61 Pac. (2d) 773], the information charged a violation of section 500 of the Vehicle Act. Appellant there contended the information was defective in that it charged him as having "wilfully" driven his automobile in such negligent manner as to cause death. Inasmuch as the information did charge a violation of section 500 of the Vehicle Code (negligent homicide) it was immaterial and harmless, the court held, that the information also charged facts which might constitute another offense, to wit: manslaughter. The court then pointed out the distinction between a wilful act which resulted in injury or death and the performance of a mere negligent act, the wilful act being one intentionally performed while a negligent act was one merely carelessly done from a lack of ordinary prudence, the court saying:

"The offense of negligent homicide defined by section 500 of the Vehicle Code does not depend upon the presence of the element of wilfulness or intention to violate the law. The offense may be complete without any such purpose or intent. . . ."

Under the information here filed against this appellant it was only necessary to prove, other than the jurisdictional facts as to time and place, that the appellant was driving a motor vehicle in a negligent manner and that such driving resulted in the death of the person therein named.

There is evidence that the windshield of the defendant was "quite dirty" and that he was somewhat blinded by the sun in his eyes. It is also in evidence that he had shortly before resuming his return trip, drunk two bottles of beer. There is no evidence, however, of any intoxication. It is also in evidence that the defendant swung across the highway and approached the parked car on the wrong side of the roadway. The fact of the impact shows that the appellant had so far swerved to his left as to come in contact with the parked car. It is also in evidence that he had, upon his trip earlier in the morning, observed the parked car and trailer on one side of the road and had seen the pile of boxes and children playing at the side of the road. The mere fact that he was not exceeding the maximum speed provided by law does not necessarily mean in view of all

the circumstances that he was proceeding at a lawful rate of speed.

The foregoing facts would indicate that appellant was negligent in the operation of his truck, and the finding of the jury to that effect was sufficiently supported by the evidence.

Objection is made by appellant that the court committed prejudicial error in permitting the prosecution to bring out that defendant had been drinking. It is claimed by defendant that the prosecution was attempting to prove something not alleged in the information and establish the fact that defendant was driving under the influence of intoxicating liquor. Appellant also claims that it was error to admit evidence that he was driving with an obscured windshield, which is also a misdemeanor not charged in the information, and was an attempt to prove that defendant was guilty of an unlawful act, not amounting to a felony, which under section 500 of the Vehicle Code was another offense than that charged in the information. It is also brought out on cross-examination that the driver did not have a driver's license, but as to that the court instructed the jury that that particular omission had nothing to do with the accident and they were instructed to disregard that fact. We do not believe the foregoing evidence was prejudicial. There was no evidence that the defendant was intoxicated, and although an examination for sobriety had been given by a doctor, no report by the doctor was filed. Also, the fact that the driver was operating the car with a dirty windshield was not a charge of a separate offense, nor was it an attempt to set up the fact that the death was caused by the commission of an unlawful act not amounting to a felony, but was admitted only as a circumstance in the proof of negligent operation of the truck.

Another major point urged for reversal by appellant was on the question of venue. The only evidence introduced as to the location of the place of the accident was the testimony of Mr. Divver, who located the road upon which the accident occurred by reference to a map, testifying: "This drawing on the upper part of the map designates a road in the southern part of the colony that runs through the southern boundary line of E. M., J. L., and J. H. Swetzer property, located on the Johnson Rancho in Yuba County."

Further testifying concerning the road, the witness said: "This direction, the right hand side of the map, traveling east will take you towards Wheatland and if you travel towards the west on the road it will take you to Bear River."

It appears in evidence in the case at several points that the offense occurred near the Earl Swetzer place, and that the Earl Swetzer place was located on the Wheatland-Bear River highway. This evidence, coupled with the testimony by Mr. Divver, which places the Swetzer property on the Johnson Rancho in Yuba County, is sufficient to establish the venue.

This court can also take judicial notice of the fact that a part of the boundary of the county of Yuba is the Bear River.

Finding no error justifying a reversal of the judgment of conviction, the judgment and order should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 21, 1938. Edmonds, J., voted for a hearing.