786 P.2d 580

Matthew **HAXFORTH**,
Petitioner–Appellant,

v.

**STATE of Idaho, Respondent.**

No. 17702.

Court of Appeals of Idaho.

Jan. 25, 1990.

Philip H. Gordon, Boise, for petitioner-appellant.

Jim Jones, Atty. Gen. by Michael A. Henderson, Deputy Atty. Gen., argued, Boise, for respondent.

WESTON, Judge, Pro Tem.

Matthew Haxforth stands convicted of vehicular manslaughter. He now appeals a district court decision affirming a magistrate's judgment dismissing his petition for post-conviction relief. He argues, first, that I.C. § 18–4006(3)(c), the vehicular manslaughter statute, conflicts with I.C. § 18–114, the general criminal intent statute. Second, he contends that I.C. § 18–4006(3)(c) violates the due process clause of the United States Constitution. Third, he argues that his conviction violates I.C. § 18–201 because he was not "culpably negligent." For the reasons explained below, we affirm.

The facts are as follows. While driving his automobile, Haxforth attempted to pass another vehicle in his lane at a time when there was traffic in the oncoming lane. Tragically, Haxforth's maneuver—a violation of I.C. § 49–634—caused the death of Susan Herman, a passenger in an oncoming vehicle.[1] Nonetheless, Haxforth's conduct was not alleged as amounting to gross negligence; it was characterized instead as ordinary negligence. Accordingly, Haxforth was charged and convicted of the misdemeanor offense of vehicular manslaughter. His petition for post-conviction relief was denied, and this appeal followed.

I

The first issue raised on appeal is whether I.C. § 18–4006(3)(c) conflicts with

---

1. I.C. § 49–634. **Limitations on overtaking on the left.—** No vehicle shall be driven to the left side of the center of the highway in overtaking and passing another vehicle proceeding in the same direction, unless the left side is clearly visible and free of oncoming traffic for a suffi-

cient distance ahead to permit the overtaking and passing to be completely made without interfering with the operation of any vehicle approaching from the opposite direction or any vehicle overtaken.

I.C. § 18–114 because it contains no intent or criminal negligence requirement. We hold that it does not conflict.

Idaho Code § 18–4006(3)(c) states in pertinent part:

> **18–4006. Manslaughter defined.**—Manslaughter is the unlawful killing of a human being, without malice. It is of three (3) kinds:
>
> . . . . .
>
> 3. Vehicular—in which the operation of a motor vehicle causes death because of:
>
> . . . . .
>
> (c) the commission of an unlawful act, not amounting to a felony, *without gross negligence.* [Emphasis added.]

Under this statute, a defendant can be convicted of vehicular manslaughter even if he exhibits only ordinary negligence. *See State v. Long,* 91 Idaho 436, 423 P.2d 858 (1967). Idaho Code § 18–114 provides: "In every crime or public offense there must exist a union, or joint operation, of act and *intent,* or *criminal negligence.*" (Emphasis added.) While these two statutes appear on their face to conflict with each other, in *State v. Curtis,* 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984), we determined they could be reconciled. There, we stated:

> In State v. Long, [91 Idaho 436, 423 P.2d 858 (1967)] our Supreme Court examined [I.C.] § 18–4006 in light of the construction earlier placed upon the phrase "criminal negligence" in § 18–114 by [State v.] Hintz [61 Idaho 411, 102 P.2d 639 (1940)] and [State v.] McMahan [57 Idaho 240, 65 P.2d 156 (1937)]. The Court in Long noted that § 18–4006 subsequently had been amended, in 1965, to create a separate category of involuntary manslaughter involving the use of a motor vehicle. As to that type of manslaughter—and that type only—the Legislature established criminal responsibility for conduct "without gross negligence" and prescribed a level of punishment less severe than that authorized for felonies. The Court in Long declared that the Legislature thereby evinced an intent to change the law existing before 1965, upon which Hintz and McMahan had been based. The Court implicitly held that vehicular

involuntary manslaughter under § 18–4006 was not subject to the restrictive interpretation of "criminal negligence" in § 18–114.
>
> We find no reason to depart from *Long.* We agree with the Supreme Court that the Legislature was free in 1965 to create a separate, lesser category of crime for vehicular homicides lacking gross negligence. Many other states previously had enacted such laws; indeed, the courts of some jurisdictions specifically had interpreted phrases such as "criminal negligence" to allow imposition of criminal penalties for acts unaccompanied by gross negligence. *See* Annot., 161 A.L.R. 10 (1946). We hold that the conduct prohibited by § 18–4006 is not made doubtful by the interpretive gloss placed upon § 18–114.

*Id.* at 487–88, 680 P.2d at 1387–88.

We continue to follow this reasoning. Idaho Code § 18–114 prescribes a general requirement for the mental element of a crime; but the Legislature may vary this requirement in defining a particular offense, subject to constitutional limits described below. The Legislature has varied the requirement in I.C. § 18–4006(3)(c), and that statute is controlling in the present case.

## II

We now turn to the constitutionality of I.C. § 18–4006(3)(c). Haxforth argues that because the statute criminalizes an act of ordinary negligence, as opposed to criminal negligence, it violates the due process clause of the United States Constitution. We disagree.

The issue of whether an act of ordinary negligence can be criminally sanctioned has been addressed by other jurisdictions. Generally, these courts have distinguished between traditional common law offenses and "public welfare offenses"—such as those brought about by the industrial revolution. *See, e.g., Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). Courts have concluded that under certain circumstances, public welfare

offenses, such as traffic violations, need not contain a general criminal intent or criminal negligence requirement in order to comply with the due process clause. Instead, the crimes can be premised upon ordinary negligence, or in some instances, even strict liability. *See, e.g., Holdridge v. United States,* 282 F.2d 302 (8th Cir.1960). The proposition which appears to emerge from these cases is that when a crime (a) does not find its roots in the common law, (b) carries only a light penalty, (c) does not gravely besmirch the offender's character, and (d) embodies a rule of conduct with which compliance can be reasonably expected, then the crime can be treated as a public welfare offense requiring only ordinary negligence. *Id.* at 310.

We must now determine whether vehicular manslaughter is such a public welfare offense. Idaho Code § 18–4006(3)(c) punishes unlawful acts with motor vehicles, causing death. Regulation of motor vehicle operation is an area without roots in the common law. Traffic laws are enacted for the benefit of the traveling public and it is reasonable to expect compliance with these laws. Moreover, vehicular manslaughter under subsection (c), being a misdemeanor, carries a relatively minor penalty. The punishment is directed not at evil conduct but at negligent acts or omissions tragically resulting in loss of life. A conviction under this statute, although deeply regrettable, does not gravely besmirch the defendant's character. Therefore, while we acknowledge that the misdemeanor form of vehicular manslaughter has some relationship to the general felony of manslaughter at common law, we nevertheless conclude that it resembles more closely a public welfare offense, and as such need not contain a criminal negligence requirement.

In so holding, we recognize that other jurisdictions are not unanimous on the question of whether a negligent manslaughter statute which does not require criminal negligence meets the due process criteria established by *Morissette, supra,* and *Holdridge, supra.* Haxforth relies upon the case of *Commonwealth v. Heck,* 341 Pa.Super. 183, 491 A.2d 212 (1985) which held that the Pennsylvania negligent manslaughter statute did not meet such criteria. However, in doing so, the *Heck* court attempted to redefine the *Morissette* concept of "public welfare offenses" to include only "social regulations of a purely civil nature." *Id.* 491 A.2d at 221, *quoting Commonwealth v. Koczwara,* 397 Pa. 575, 155 A.2d 825, 827 (1959). Other states have reviewed almost identical negligent homicide statutes and concluded that they met the "public welfare offenses" criteria. *See State v. Wojahn,* 204 Or. 84, 282 P.2d 675 (1955) and Annot., *Automobiles—Negligent Homicide,* 20 A.L.R.3d 473, § 3 (1968). We believe that this is the better approach. Consequently, we hold that I.C. § 18–4006(3)(c) complies with the due process clause.[2]

### III

Finally, Haxforth argues his conviction violates I.C. § 18–201 because he was not "culpably negligent." We disagree. Idaho Code § 18–201 states that a person is incapable of committing a crime if he "committed the act ... through misfortune or by accident, when it appears that there was not evil design, intention or *culpable negligence.*" (Emphasis added.) In *State v. Long,* 91 Idaho 436, 443, 423 P.2d 858, 865 (1967) our Supreme Court determined that the reference to "culpable negligence" is simply a reiteration of the excusable homicide standard under I.C. § 18–4012. It does not preclude imposition of criminal responsibility for negligence under the vehicular manslaughter statute. In essence, we understand *Long* to mean that negligence in committing an unlawful act, resulting in death, *is* "culpable negligence." Therefore, we conclude that Haxforth is not shielded by I.C. § 18–201.

---

**2.** Our ruling on the constitutionality of the vehicular manslaughter statute also disposes of Haxforth's contention that he was denied adequate representation at trial because of his attorney's failure to raise the constitutional issue. Haxforth has now received full review of the merits of his constitutional claim.

The order of the district court, denying Haxforth's application for post-conviction relief, is affirmed. No costs allowed.

WALTERS, C.J., and BURNETT, J., concur.